William B. Meister and Nell I. Meister v. Commissioner,
Meister v. Commissioner
Docket No. 74216.
United States Tax Court
T.C. Memo 1959-202; 1959 Tax Ct. Memo LEXIS 48; 18 T.C.M. (CCH) 899; T.C.M. (RIA) 59202; October 26, 1959
*48 William B. Meister, pro se, 4047 Kulamann Street, Honolulu, Hawaii. Charles W. Nyquist, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in Federal income tax for the year 1956 against petitioners in the sum of $617.78. This deficiency results from disallowances of deductions explained in the statement attached to the notice of deficiency as follows: "(a) Medical expenses in the amount of $1,904.84 are disallowed as shown below: "1. Transportation expense
$1,737.24
"2. Loss on sale of automobile
167.60
Total disallowed
$1,904.84
"1. Transportation expenses in the amount of $1,737.24 stated to have been incurred for travel from Italy to Honolulu, Hawaii, which were deducted on your return on the grounds that they constituted medical expenses are disallowed since they are held to be nondeductible personal expenses. "2. A loss from the sale of an automobile used for personal purposes claimed on your return as a medical expense deduction in the amount of $167.60 is disallowed since such loss, if any, constitutes a nondeductible personal expense. "(b) On your return for the year 1956 *49 you claimed a business loss from medical practice in the amount of $485.84, or the difference between gross profit of $296.00 and deductions of $781.84. Expenses of $529.10, consisting of interest, taxes, and repairs, which were included in the deductions claimed are disallowed since they constitute maintenance expenses of your personal residence and do not represent deductible trade or business expenses." Findings of Fact Petitioners are husband and wife who live in Honolulu, Hawaii, and lived there during the taxable year 1956. They filed a joint Federal income tax return for that year with the district director of internal revenue at Honolulu. Petitioner William B. Meister, who will sometimes be referred to herein as "petitioner," is a physician. For a number of years he served as a doctor in the United States Army Medical Corps, but retired from that service prior to 1956. In the taxable year he was a retired officer of the United States Army. In 1956 he was 74 years old. Petitioners owned and maintained a home in Honolulu during the taxable year. During that year they made some repairs to the walks around the patio and entrances to the house, and also did "some paint jobs, *50 things of that sort." Petitioner reported $308 as total receipts in 1956 from his business activity as a physician. He deducted as "business deductions" the amount of $162.04, $52.06, and $315, as representing, respectively, one-half of the interest paid on a mortgage covering petitioners' house, one-half of the real estate taxes paid on the house, and one-half of the repairs claimed to have been made on the house. Petitioner reported a net loss resulting from his business activity as a physician in the amount of $485.84. In 1956 petitioner received from his business activity as a physician the sum of $356 from Sears Roebuck and Co. in return for professional services rendered to its employees at that company's infirmary. Petitioner was employed by that company to render services to its employees on a fee basis, and in connection with this work he drove to the company's infirmary almost every day he was in Honolulu in 1956. On account of this travel he claimed and was allowed deductions on account of automobile expenses and depreciation. Petitioner did not use his home during the taxable year in connection with his practice of medicine. In 1956 petitioners planned a 4 months' *51 vacation trip to Europe. They left Honolulu on a freighter May 30 for San Francisco. At that city they boarded another freighter and, sailing through the Panama Canal, arrived in Antwerp on July 16. From Antwerp they went to London and then to Paris where they took possession of a Volkswagen automobile which they had purchased through an agent for approximately $1,153. They then motored through Holland and Germany into Italy. On September 6, 1956, the petitioners reached Terni, a small city north of Rome, and petitioner was stricken with excruciating pain in his left flank and groin. When they reached Rome the next day petitioner consulted the hotel physician who diagnosed petitioner's trouble as ureteral "calculus" or "stone" and prescribed an opium derivative with the hope that the stone would pass in a few hours or days. On September 12 petitioners arrived in Livorno and the expected relief had not yet come. Accordingly, petitioner went to a small United States Army field hospital near Livorno for consultation and X-ray examination. The diagnosis of ureteral stone was confirmed and it was again predicted that the stone would pass soon. However, when the severe pain continued 4 or *52 5 days more, another X-ray examination was made and it was discovered that the left ureter was dilated above the blocked point and there was great danger of the destruction of the left kidney. Petitioner was advised to go to a hospital at once for appropriate surgery. Petitioner knew that the Letterman Army Hospital in San Francisco had an excellent medical staff, which included a proficient surgeon specializing in urology who was personally known to petitioner. Petitioner did not know any other surgeon doing that kind of surgery either in Europe or the United States, although there were army hospitals in Europe which had urologists on their staffs. Petitioner Nell I. Meister, in the course of their automobile trip through Germany into Italy, began to suffer from gastritis and nervous complications. After petitioner William was stricken with his illness, Nell had to do all the driving, arrange for hotel accommodations, and act as nurse for William. As a result her gastritis became much worse and she had a complete nervous breakdown. The medical staff at the army field hospital near Livorno recommended that she, too, seek medical attention as soon as possible at the hospital of her *53 choice. The hospital of Nell's choice was the Letterman Army Hospital in San Francisco. Thereupon, petitioners decided to give up their European tour and to fly immediately to San Francisco in order to obtain medical treatment at the Letterman Army Hospital there. They sold their Volkswagen automobile in Livorno for approximately $167 less than they had paid for it, and purchased aeroplane tickets from Pisa, Italy, to San Francisco at a cost of $1,401.24. Nell and William were of essential help to each other during their illnesses and neither could have made the trip to California without the assistance and care of the other. This cost of their aeroplane transportation from Italy to San Francisco was at least $600 more than would have been their return transportation from Europe to San Francisco en route to Hawaii had they traveled by ocean freighter as on their trip from San Francisco to Europe. En route to San Francisco and shortly before the plane arrived in that city, on or about September 19, petitioner's stone passed and his colic pains ceased. Petitioners both entered the Letterman Army Hospital as patients. William was subjected to further X-ray studies, including what *54 is known as an intravenous pyelogram, which established that the ureteral blocking no longer existed and that damage to the left kidney no longer threatened. Nell was treated for her nervous breakdown. Both petitioners were discharged in about 2 weeks and proceeded on to their home in Honolulu. Opinion KERN, Judge: The most interesting issue presented herein and the one which involves the largest deduction disallowed relates to respondent's disallowance of the deduction representing what petitioners claim to be amounts paid "for transportation primarily for and essential to medical care" within the meaning of section 213(e)(1)(B) of the Internal Revenue Code of 1954. In many respects the instant case is similar to the recent case of Stanley D. Winderman, 32 T.C. - (September 14, 1959). However, there is one important dissimilarity, In the instant case petitioners were in Europe on a 4 months' vacation trip and planned to return to their home in Hawaii. We may presume that they would have returned by the same route as that by which they had traveled to Europe and in the same manner. Thus they would have made a trip from Italy to San Francisco in any event *55 and without regard to illnesses or any necessity of obtaining medical treatment. But this trip would have been by the slower and less expensive transportation of ocean freighter. Only to the extent that the cost of the faster trip by air exceeded that of the trip home which they would have taken in any event can we say that the trip which they did take would not have been taken except for petitioner's desire to obtain "diagnosis, cure, mitigation, treatment, or prevention of disease" within the meaning of section 213(e)(1)(A). Upon the question thus arising of the extent by which the cost of petitioners' trip by air from Italy to San Francisco exceeded that of the trip which they would have taken had it not been for their illnesses, we have been forced on the record to rely heavily on the so-called Cohan rule in order to fix the amount of the deduction which we feel the petitioners are entitled to take. Under all of the circumstances we have decided that this amount is $600. Therefore, under the general principles of Stanley D. Winderman, supra, and the peculiar facts of the instant case, we conclude that the petitioners are entitled to a deduction in the amount of $600 "for transportation *56 primarily for and essential to medical care" within the meaning of section 213(e)(1)(B) of the Internal Revenue Code of 1954. Petitioners have not directed us to any provision of the Internal Revenue Code, nor are we aware of any, which provides for the deduction as a medical expense of the loss of approximately $167 sustained by petitioners on the sale of their Volkswagen automobile in Italy after they had used it for about 2 months in touring Europe. On this issue we decided in favor of respondent. With regard to the deductions of interest, taxes, and repairs on petitioners' home as business expenses, our findings of fact are dispositive of this issue. In view of the fact that William's receipts from Sears Roebuck and Co. for professional work done on its premises were in excess of the professional receipts reported by him, it is impossible to conclude that petitioners' home was used for business purposes. On this issue we also decide in favor of respondent. Decision will be entered under Rule 50.